No. 13,850.

PETER McCORKLE vs. ANHEUSER-BUSCH BREWING ASSOCIATION.

### SYLLABUS.

A street car, propelled by electricity and moving at a moderate speed, is run into at a corner by a covered beer wagon, the driver of which, occupying a seat from which his view upon either side is obstructed by the cover of the wagon, drives his mules at a brisk pace along the street which intersects the car tracks, and practically into the car, before looking up or down the track: *held*, upon the facts proven, the driver was at fault and the motorman is entitled to recover from the driver's employer for personal injuries resulting from the collision.

APPEAL form the Civil District Court, Parish of Orleans.-- *King, J.*

*Denegre, Blair & Denegre,* for Plaintiff, Appellee.

*Chaffe & Bowers,* for Defendant, Appellant.

The opinion of the court was delivered by

MONROE, J. This is an action in damages for personal injuries. The defense is a general denial and "contributory negligence."

The facts, as disclosed by the record, are: That, on a clear day in May, about half-past nine o'clock in the morning, the plaintiff, as motorman, was taking a street car up Hurst street. When he passed the corner of Webster street, which is the third corner from the terminus of the line, he shut off the power and gave a turn to his brake, preparatory to the stop which he was soon to make, and, before he reached the next corner, the speed of the car had been reduced to, probably, six miles an hour. The next corner was the intersection of Henry Clay avenue, along which, Stephen Girod, a driver employed by the defendant corporation, from his seat, in the wagon to which they were attached, was driving a pair of mules. By reason of the position of his seat and the cover of the wagon, the driver could not see to the one side or the other without leaning forward. Several witnesses testify that the mules were moving very rapidly, and we are satisfied that the pace was at least equal to a brisk trot. As the wagon approached Hurst street, the car of which plaintiff had

charge was approaching the same corner upon that one of the two tracks on that street which lies nearest to St. Charles avenue, from which direction the wagon was coming. Upon the particular corner which intervened between the two vehicles there was a frame building with a shed which extended over the banquette, so that, under the most favorable circumstances, the two actors in the affair could not have seen each other until they were almost in collision; and, as we have stated, the driver labored under the further disadvantage of having his view upon either side cut off by the cover of the wagon. The evidence satisfies us that the motorman was ringing his bell and that the failure of the driver to hear it was attributable either to the fact that the sound was drowned by the noise made by the wagon and mules, or, as is more likely, that his thoughts were otherwise engaged. However that may be, he drove straight on, into Hurst street, and was entirely oblivious of the approach of the car until a collision was inevitable, notwithstanding his best efforts and those of the motorman to prevent it. The result of the collision was, that the front of the car was badly smashed by the pole of the wagon, which also broke the collarbone and jaw of the motorman, made an ugly hole, several inches in depth, in his shoulder and otherwise bruised and injured him, so that he was laid up at home for three weeks and was unable to return to his work for seven weeks. We think it unnecessary to recapitulate in detail the testimony of the various witnesses who were examined. A lady, who was nearer to the scene of the accident than any one else, being but a few feet away, testifies that she was walking along Henry Clay avenue, towards, and very near, the corner of Hurst street, when the wagon passed her, and that, observing the rapidity with which the mules were moving, and hearing the bell of the approaching car, and, as we understand her, by that time, seeing the car, she attempted to attract the attention of the driver by screaming and waving her arms, and that, then, realizing that a collision was about to occur, she closed her eyes. The driver himself testifies in part as follows:

"Q. Did you look for the car when you got to the corner? A. When I got far enough with the building, I looked up and down the street and the car was on top of me. Q. You looked up and down the street and the car was on top of you? A. Yes, sir; I leaned out of my wagon, it was too late, and the car was on top of me." He testifies that it was his intention to have turned down Hurst street, in the direction from which the car was approaching, and he was asked how

far he was from the car track when he started to turn, to which he replied. "The mules were near on the track when I started to make the turn. I was sitting twelve feet behind the pole. I heard no bell or nothing, and I started to pull my mules around, and by the time I started to make the turn they were pretty well on the track." The pole, it may be remarked, is shown to have been ten feet long, and the witness, no doubt, means that his seat was twelve feet behind the forward end, but just how far back in the wagon that placed him does not appear. He further testifies: "Then you did not see the car coming until after you attempted to make the turn? A. No, sir; I did not hear no bell or anything. Q. You didn't attempt to make the turn until the mules were almost on the track, you say? A. Yes, sir. Q. Then you hadn't seen the car when your mules had almost reached the track? A. No, sir; I hadn't seen it or heard it." He also testifies that he slacked his speed only when he started to make the turn, and, from other testimony, we think it doubtful whether he did so even then. Beyond this it may be stated that neither the driver, the mules, nor the wagon, received any injury, and that the car was stopped by the time the forward end reached the upper crossing of Henry Clay avenue.

Upon this showing, we are of opinion that the driver was at fault, that the motorman was not, and that the latter is entitled to recover. The judge *a quo* allowed him $750, and he asks that the amount be increased. We think, however, that we should defer to the opinion of the trial judge, although if he had allowed the plaintiff a somewhat larger amount this judgment would likewise have been affirmed.

Judgment affirmed.